[No. 44189. En Banc. March 3, 1977.]

PAN PACIFIC TRADING CORPORATION, *Respondent,* v.
THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant.*

*Slade Gorton, Attorney General,* and *Gomer L. Cannon, Assistant,* for appellant.

*Norman W. Cohen* and *Graham, Cohen & Wampold,* for respondent.

DOLLIVER, J.—This is an appeal by the defendant, the Department of Labor and Industries, from a judgment of the Superior Court for Thurston County. It was certified to and accepted by this court pursuant to RCW 2.06.030 and ROA I–14(1)(c), (e) (now RAP 4.2(a)(2), (4)).

The respondent, Pan Pacific Trading Corporation, a Washington corporation located in Tacoma, is engaged in merchandising raw logs which are purchased from other parties for export. The logs are purchased FOB yard. No employee goes into the woods for logging operations although some employees engage in log purchasing and log surveying. The respondent's employees, using machines, stack, sort, and band the logs which are then transported by respondent to the log storage yard where they are loaded aboard ships by longshoremen not employed by the respondent.

Prior to January 1, 1972, the classifications of occupations and industries for industrial insurance premium rate purposes were established by statute. RCW 51.20. Dry land log storage and log sorting yards were not specifically listed as a statutory classification. In June of 1971, the department ordered Pan Pacific to report workmen hours engaged in dry land log storage and log sorting in Class 50–1, a general logging classification. Pan Pacific appealed to the Board of Industrial Appeals. The hearing examiner issued

an order dated May 18, 1972, to classify Pan Pacific's operations as a pole yard under Class 10–2. The board then unanimously entered an order denying the petition for review and adopting the hearing examiner's decision. The appeal of the department to the Superior Court for Thurston County was dismissed.

January 1, 1972, RCW 51.16.035 became effective. It states:

> The department shall classify all occupations or industries in accordance with their degree of hazard and fix therefor basic rates of premium which shall be the lowest necessary to maintain actuarial solvency of the accident and medical aid funds in accordance with recognized insurance principles. The department shall formulate and adopt rules and regulations governing the method of premium calculation and collection and providing for a rating system consistent with recognized principles of workmen's compensation insurance which shall be designed to stimulate and encourage accident prevention and to facilitate collection. The department may annually, or at such other times as it deems necessary to maintain solvency of the funds, readjust rates in accordance with the rating system to become effective on such dates as the department may designate.

Pursuant to this statute, hearings were held on November 29, 1971, and December 1, 1971, and, effective January 1, 1972, the department enacted WAC 296–18–500 classifying log storage under a general category of logging (Class 50–1) for industrial insurance rate–making purposes.

On May 18, 1973, Pan Pacific Trading Corporation filed a complaint in the Superior Court for Thurston County seeking a declaratory judgment concerning the validity of WAC 296–18–500 (now WAC 296–17–659). The complaint charged that the administrative rule was invalid for each of the reasons specified in RCW 34.04.070(2) which states:

> In a proceeding under subsection (1) of this section the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rule–making procedures.

The trial court concluded the classification of respondent's log storage and sorting yards in Class 50–1 to be "*unlawful,* void, null and of no effect for failure of the DEPARTMENT OF LABOR AND INDUSTRIES to substantially comply with the rule making requirements of RCW 34.04-.025;" it prohibited the department from classifying the yards in Class 50–1 or any other logging classification; and it directed that Pan Pacific's log storage and log sorting yards be classified under Class 10–2 (pole yard) and that insurance premiums be assessed accordingly. (Italics ours.)

The first issue before the court is whether WAC 296–18–500 was adopted in compliance with statutory rule–making procedures of RCW 34.04.025. This statute requires:

(1) Prior to the adoption, amendment or repeal of any rule, each agency shall:

(a) Give at least twenty days notice of its intended action by filing the notice with the code reviser, mailing the notice to all persons who have made timely request of the agency for advance notice of its rule–making proceedings, and giving public notice . . .

(b) Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing.

Regarding this issue, the appellant contends there is insufficient evidence to support each of the following findings of fact: Pan Pacific gave timely and sufficient request for advance notice of rule–making proceedings; the department was aware that Pan Pacific desired to be informed of classification changes and aware that it desired an opportunity to submit data and other material; the department did not inform Pan Pacific that it intended or did add log storage and sorting yards to the logging classifications; the department did not comply with RCW 34.04.025 by affording all interested parties, including Pan Pacific, an opportunity to submit data and other material.

Our study of the record shows that there is ample evidence of repeated requests on the part of Pan Pacific for advance notice of rule–making proceedings and of the department's knowledge of Pan Pacific's interest in the

classification matter. On April 23, 1971, C. T. Hillman, vice-president and general manager of Pan Pacific, wrote to H. L. Woodward, chief underwriter for the department, and expressed his dissatisfaction with Class 50–1 and asked that the department address any correspondence pertaining to Pan Pacific's classification to Vernon Parks, Pan Pacific's employer representative. On November 19, 1970, Parks wrote to the department director, William C. Jacobs, requesting to be put on the list for receiving department publications. On December 15, 1971, Mr. Parks again wrote to the department requesting copies of all employee and employer bulletins. Mr. Parks testified that, after he made an oral request in the Fall of 1971, he was told that he would be notified when the manual containing the classifications was completed.

▉ The appellant contends that the written requests described above were not sufficient requests for advance notice. Though the requests made by Pan Pacific and its representatives were arguably insufficient in form, taken together they gave ample knowledge of respondent's desire to be heard and they were sufficient in substance. The form required by the department was unspecified. The department cites no statute or administrative rules specifying the form which the request is to take. Having no prescribed form for requesting advance notice, the department cannot deny the validity of the repeated, good–faith requests which were made by Pan Pacific.

The next issue raised is whether the department was acting within its statutory authority in adopting WAC 296–18–500. The department challenges the sufficiency of the evidence supporting several findings of fact which are related to this issue: Log storage and sorting are neither comparable nor similar to the logging operations; the risk and hazard of logging is considerably greater than that of log storage and sorting and sufficiently different to preclude placing all in the same class; and the department's classification was done without consideration of risk and hazard as required by RCW 51.16.035.

An examination of the testimony shows that there is substantial evidence supporting each of the trial court's findings of fact. An employee of the department testified that he did not take into account the relative degree of hazard or danger in respondent's business for rate–making purposes. The superintendent of a log storage yard for a company other than Pan Pacific testified dry land storage of logs did not resemble logging activities as known in the industry, that there is no bucking, falling, or skidding conducted, and that most, if not all, activities are conducted on level terrain by machine and away from the woods. There was further testimony the principal danger in logging involves the topography, the standing timber, and the methods and equipment used in obtaining logs. In the opinion of one person who testified, logging "is the most dangerous occupation in the world," while log storage is not a particularly dangerous occupation.

We find the department was acting contrary to its statutory authority by persisting in classifying log storage with general logging activities when clear, factual evidence established that the occupations were greatly dissimilar in their degree of hazard. However, we are unwilling to interpret this statute (RCW 51.16.035) to require classification by risk within each occupation and industry. We are sympathetic with the department's contention that it is unable to statistically determine the risk to employees within each occupation or industry. By enacting an ambiguous statute, the legislature has allowed the department some discretion in determining the degree of intricacy to use in its classifications. Nevertheless, the legislature obviously intended an employer not be required to pay for a risk not present in its particular industry. When there is considerable factual information distinguishing log storage from general logging activity and that distinction has been recognized by the Board of Industrial Insurance Appeals, the department is in defiance of its legislative mandate when it continues to classify the two together.

■ The trial court further found the act of the department in classifying Pan Pacific under general logging was arbitrary and capricious. It concluded that a superior court may properly take jurisdiction to review a nonjudicial administrative act which is alleged to be illegal, arbitrary, or capricious under the powers granted to the court by Const. art. 4, §§ 1, 6. *See Reagles v. Simpson,* 72 Wn.2d 577, 584, 434 P.2d 559 (1967), and *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno,* 59 Wn.2d 366, 368, 367 P.2d 995 (1962). We find that jurisdiction on this basis was improperly taken. In *State ex rel. Hood v. State Personnel Bd.,* 82 Wn.2d 396, 401, 511 P.2d 52 (1973), this court limited the power of review to cases in which fundamental rights are violated. *See also Pettit v. Board of Tax Appeals,* 85 Wn.2d 646, 538 P.2d 501 (1975). In that no fundamental rights were argued by the parties and no such rights were recognized by the court, we find that the jurisdictional basis for making a finding of arbitrary and capricious conduct was not properly established.

We affirm the decision of the Superior Court prohibiting the classification of log storage and sorting yards under logging (Class 50–1) and directing that log storage operations be classified for industrial insurance rate–making purposes under Class 10–2. Pan Pacific Trading Corporation's industrial insurance premiums shall be adjusted and assessed based upon the proposition that at all material times the appropriate classification for Pan Pacific's log storage and log sorting operations has been and is Class 10–2.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.